UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,                              NO. 13-20564

                        Plaintiff,

                                                       HON. STEPHEN J. MURPHY
-vs-

D-1 MOHAMED FARAJ,

                        Defendant.
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

Now comes the United States of America, by and through undersigned counsel, and submits the following memorandum in support of its position as to sentencing in the above captioned case.

## Introduction

From approximately May 2009 – August 2013, defendant Mohamed Faraj organized and operated a sophisticated narcotics enterprise in Detroit on Rutherford Street and in the greater Warrendale neighborhood.   As the evidence at trial demonstrated, the enterprise's main activity was the sale (both wholesale and retail

quantities) of marijuana (kush) and prescription pills (amphetamine dextroamphetamine, hydrocodone, alprazolam, and carisoprodol). Defendant Faraj, a/k/a "Mojo," was clearly the de facto leader of this narcotics operation. It was defendant Faraj that controlled the day-to-day narcotics distribution and his actions held the greatest influence within the enterprise. He was the one responsible for procuring narcotics for the organization; however, most importantly, he was the one responsible for this enterprise's greatest impact on this community: the recruitment of teenagers to act as his drug distributors, the violence meted out by the young men he led, and the havoc, including arson and the presence of firearms, inflicted on the residents of the 6800 block of Rutherford and the surrounding neighborhood. As testified to by residents and workers from this neighborhood, including Stephanie Hajjoul, Yazmeen Bazzi, James Cooper, and John Deeg, Mohamed Faraj's drug distribution was a constant on this block, and left the residents afraid to go out of their homes or drive north to leave the block. Defendant's Faraj's drug distribution operation literally held an entire block under its oppressive sway. The destructive influence the defendant has had on this neighborhood warrants a sentence commiserate with the seriousness of his misconduct.

2

## Sentencing Factors

Pursuant to 18 U.S.C. §3583(c), the factors to be considered include the following:

### 3553(a)(1): the nature and circumstances of the offense and the history and characteristics of the defendant

As the Court heard throughout the testimony and evidence of the trial in this case, the defendant's crimes was a driving force behind the violence and blight experienced in the Warrendale neighborhood in the city of Detroit. Armed men mass-distributing illegal narcotics out of vacant houses clearly undercuts the safety and well-being of all of the law-abiding citizens residing in this neighborhood. This is a narrative that has played out all too frequently within our district and has led to many people, including community members the Court heard from during the trial, feeling as if they are prisoners in their own homes. Thus, the nature and circumstances of this offense has real, tangible, and serious effects on the community where it took place.

As to his personal history and characteristics, the defendant has earned his career offender status. Time and time again, defendant Faraj has demonstrated that he flaunts the law and has no intention of changing or modifying his behavior. As was testified to by the organization's insiders, Mohamed Faraj's preferred nickname was "The King" or "King Mojo." The defendant loved his status as being the "main man" in this area and loved demonstrating his rank on the top of the criminal underworld by

3

his expensive taste in cars and fashion.    All of his flashy lifestyle meanwhile ignored the destruction of lives and property his actions left in his wake.    Defendant Faraj showed no second thoughts about putting teenagers out to sell his narcotics and getting criminal records (all while paying them $100 for a 12-hour shift) nor did he show a moment of hesitancy when supplying these same teenagers with AK-47's and other firearms. Whether it was Ali Al-Hisnawi ("Moley"), Mohammed Al-Hakami ("AK"), Zaidon Al-Beheia ("Z"), Durgham Al-Fadhili ("Peanut") or any of the other teenagers defendant Faraj put out on those blocks to make him rich, the record of this case is devoid of any examples of the defendant showing any concern for those boys and the ruin he was making of their lives.    Couple that with the near complete destruction the defendant made of the 6800 block of Rutherford and the defendant's character of callous disregard for anyone or anything around him comes into complete focus.[1]

Moreover, the Court has seen ample evidence of the defendant's failure to bring his actions into accord with the law.    The defendant attempts to couch his criminal history as simply a string of minor incidents.    Looking at his criminal record from a different perspective shows that characterization is wishful thinking at best.    The defendant has been dealing narcotics for nearly a decade.    In that decade, he has been arrested with drugs eight times and convicted five times for such offenses.    He has

---

[1] The government would strongly urge the Court to watch government exhibit # 278 (the video of the 6800 block of Rutherford taken the day after the defendant's arrest in August 2013).

been convicted of felony firearm and attempted breaking and entering.   He has been on probation or incarcerated on a continuing basis since 2003.   Nothing has stopped defendant Faraj from committing crimes and being a destructive force.   The starkest reality of this fact is seen by his conviction for homicide-manslaughter with a vehicle in November 2011.   The facts of that case demonstrate "the characteristics of the defendant." It was the defendant who struck and killed a man who was crossing the street.   Instead of taking responsibility, he fled the scene of the accident and convinced a young girl in the neighborhood, Mary Bazzi, to claim that she was driving so he would avoid any criminal consequence.   It was only right before her own trial that Ms. Bazzi recanted and told investigators the truth.   It was a full fifteen months after the accident and the false story that he helped to concoct that the defendant was arrested for homicide-manslaughter with a motor vehicle, reckless driving causing death, failure to stop at scene of a serious personal injury accident, false report of a felony, and obstruction of justice.   He eventually pled guilty to and received one-year in custody (with work release) and probation.   The entire time after he killed the man, put another person up to take responsibility, pled guilty, and was on work release, he continued to distribute narcotics and run his organization of teenagers and young men.   That is the character of the defendant who stands before the Court for sentencing.   Despite repeated warnings, including state incarceration and probation, the defendant refused to change his ways.   The defendant has shown himself committed to one path – that of

making money through illegal narcotics sales.

**3553(a)(2)(A): the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense**

The government believes that a lengthy sentence of imprisonment is the only way to reflect the seriousness of or provide just punishment for the offense.  It is well-documented how the illegal distribution of narcotics has been a major factor in the ravishing of major urban centers in the United States, and Detroit, in particular.   The defendant's actions are directly linked to this destructive force with his sole motivation being his financial gain and his ability to live the "high life" of expensive clothes and flashy cars.

**3553(a)(2)(B): the need for the sentence imposed to afford adequate deterrence**

This factor dovetails into the first factor.  In order to serve the purpose of general deterrence – that is, to deter others from the same conduct that the defendant has committed – the nature and seriousness of the instant offense is of great import. As the Court has seen through the evidence in this case, the defendant is well-known in this neighborhood of Detroit and Dearborn.  There was ample evidence of multiple young men looking up to "Mojo" and wanting to be like him.   In order to deter them from continuing in, and others from entering into, this violent world of the drug trade, they and members of the public at large must know that engaging in this activity, with all

6

of its readily foreseeable consequences, brings with it severe punishment, especially for someone who has already had numerous prior warnings from the criminal justice system.

In terms of specific deterrence, nothing that the criminal justice system has meted out to date has deterred defendant Faraj.   His love of easy money, with limited risk since he was never the person standing on the street or in the vacant house distributing the narcotics, has continued to fuel his criminal behavior.   The only punishment that will deter defendant Faraj is lengthy incarceration.

### 3553(a)(2)(C): the need for the sentence imposed to protect the public from further crimes of the defendant

This factor is a very real concern in this particular sentencing.   The defendant's criminal actions have had a huge impact on the community.   He has organized a group of young men who have literally gutted a city block to serve their criminal purposes. Multiple police raids and minor sentences have not protected the public from his crimes.   It is time for this Court to protect the hard-working and law-abiding residents of this block and neighborhood and parents of young men trying to keep them on the straight and narrow road from the defendant's destructive crimes.

### 3553(a)(6): the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct

As reflected in the guidelines of this case (360-life) and the mandatory minimum

in place based on his CCE conviction (20 years), the defendant stands at the top of this enterprise's culpability chart.   The defendant attempts to deflect his status in two ways. First, he attempts to narrow the focus of his convictions by re-framing an argument he used at trial – "it's just weed;" and thus he should not receive either the mandatory minimum or a guidelines sentence.   This case is not just about marijuana distribution. As the government has alleged from the initial indictment until now, the defendant's crimes are far broader and more destructive than marijuana distribution.   The manner and means the defendant went about this drug distribution (utilizing teenagers, arming them with assault rifles and firearms, burning down multiple homes and businesses on Rutherford and Warren to further his drug distribution) are serious and grave wounds of our social contract that must be addressed.

The second method by which the defendant attempts to deflect his culpability is by pointing at Hafez Hammoud, his partner in crime.  The government does not dispute that Mr. Hammoud committed many crimes.    However, Hammoud committed the vast majority of his crimes while he was distributing narcotics for and making money for the defendant.   Second, it is beyond dispute, that in October 2010, Mr. Hammoud stopped dealing drugs for the defendant and the defendant's operation continued.   Mr. Hammoud did come back to the organization in 2012, but left once again and the distribution ring continued on without Mr. Hammoud without missing a beat.  Mr. Hammoud has tried to stop committing the crimes in this case, the same

8

cannot be said for the defendant.    Likewise, Mr. Hammoud took tremendous personal risk by cooperating with the government in this case.    The government had a little, and largely circumstantial, case against the defendant until Mr. Hammoud came forward and identified specific paths of investigation that could be corroborated (Thornton Plastic vials, where and how the defendant would spend his narcotics proceeds, and various arrests and co-conspirators that could be connected to the enterprise).    Finally, Mr. Hammoud's testimony was corroborated time and time again.    It was Mr. Hammoud who told investigators about the twin assaults of Mr. Harajili.    It was Mr. Hammoud who told investigators about numerous incidents that could be verified by researching Detroit and Dearborn police reports.    The defendant is in a completely different situation than Hafez Hammoud.    It was not Hammoud's operation; it was the defendant's from beginning to end.    It was not Hammoud providing guns to the street workers; it was the defendant.    It was not Hammoud who had $80,000 saved up and stored with his sisters; it was the defendant.

In the final analysis, the defendant has operated a continuing criminal enterprise that has sucked the life and safety out of the 6800 block of Rutherford for one reason – his financial gain.    It is for that, and nothing else, that the defendant stands before the Court today facing the lengthy mandatory minimum sentence he does today.    Still, for all of the reasons stated above, the government respectfully believes that a guideline sentence would most accurately capture all of the 3553 considerations for this

defendant.    Consequently, the government requests that the Court impose a custodial

sentence of 360 months on the defendant.

> Respectfully submitted,

Dated: May 4, 2015                                    BARBARA L. McQUADE
                                                      United States Attorney


                                                      _s/ Christopher Graveline_____
                                                      CHRISTOPHER GRAVELINE
                                                      TERRENCE HAUGABOOK
                                                      Assistant U.S. Attorneys
                                                      211 West Fort Street, Suite 2001
                                                      Detroit, Michigan 48226
                                                      (313) 226-9155
                                                      christopher.graveline2@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on Monday, May 04, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

James C. Howarth

I further certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

N/A

_s/Christopher Graveline_
CHRISTOPHER GRAVELINE
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI   48226
Christopher.Graveline2@usdoj.gov
(313) 226-9155
P69515

11