```
 1                     UNITED STATES DISTRICT COURT
                       EASTERN DISTRICT OF MICHIGAN
 2                           SOUTHERN DIVISION

 3
       UNITED STATES OF AMERICA,
 4
                          Plaintiff,
 5     vs.                                 Case No. 13-20564
                                           Hon. Stephen J. Murphy, III
 6     D-1 MOHAMED FARAJ,

 7                          Defendant.
       _____/
 8
                              SENTENCING
 9
                 BEFORE THE HONORABLE STEPHEN J. MURPHY, III
10                      United States District Judge
                    Theodore Levin United States Courthouse
11                      231 West Lafayette Boulevard
                          Detroit, Michigan  48226
12                          Monday, June 22, 2015

13     APPEARANCES:

14     For the Plaintiff            CHRISTOPHER GRAVELINE
       United States of America:    GJON JUNCAJ
15                                   U.S. Attorney's Office
                                     211 West Fort Street
16                                   Suite 2001
                                     Detroit, Michigan  48226
17                                   313-226-9155

18     For the Defendant            JAMES C. HOWARTH
       Mohamed Faraj:               615 Griswold Street
19                                   Suite 820
                                     Detroit, Michigan 48226
20                                   313-963-1455 |

21     Also Present:                KIMBERLY CROVA
                                     U.S. Probation Department
22

23

24         To obtain a copy of this official transcript, contact:
               Linda M. Cavanagh, Official Court Reporter
25          (248) 884-0327 • linda_cavanagh@mied.uscourts.gov
```

TABLE OF CONTENTS

Page

OBJECTIONS TO THE PRE-SENTENCE REPORT:

Objection 1:

Comments by the Court...............................4
Comments by Mr. Howarth............................4

Objections 2 and 4:

Comments by the Court................................5
Comments by Mr. Howarth............................6
Further Comments by the Court.......................7
Comments by Mr. Graveline..........................8
Ruling by the Court...............................10

Objection 3:

Comments by the Court.............................11
Comments by Mr. Howarth...........................11
Comments by Mr. Graveline.........................12
Ruling by the Court...............................13

Objection 5:

Ruling by the Court...............................13

SENTENCING:

Comments by Mr. Howarth...........................16
Comments by Defendant Mohamed Faraj...............22
Comments by Mr. Graveline.........................24
Comments by the Court.............................25
Sentence of the Court.............................30

EXHIBITS

Identification                    Offered    Received

NONE

Sentencing • Monday, June 22, 2015

3

```
 1          Detroit, Michigan
 2          Monday, June 22, 2015
 3                        —  —  —
 4          (Proceedings commenced at 2:39 p.m., all parties
 5          present)
 6          THE CLERK:  Case No. 13-20564, United States of
 7   America versus Mohamed Faraj.
 8          MR. GRAVELINE:  Afternoon, Your Honor.  Chris
 9   Graveline and Gjon Juncaj on behalf of the United States.
10          THE COURT:  Good afternoon.
11          MR. HOWARTH:  Good afternoon, Your Honor.  James
12   Howarth on behalf of Mohamed Faraj.
13          THE COURT:  Okay.  Welcome to you, and Mr. Faraj is
14   here in court.  You may all be seated.
15          We had a criminal trial that everybody remembers
16   well, and Mr. Faraj was convicted of Continuing Criminal
17   Enterprise, Conspiracy to Distribute Controlled Substances and
18   Use of Communication Facility and Facilitating the Conspiracy
19   to Distribute Controlled Substances.
20          Now is the time for sentencing.  Why don't I invite
21   Mr. Graveline and Mr. Howarth to come forward and we'll work
22   through these objections before we get going on the sentencing.
23          Ms. Crova wrote the report and it was initially
24   issued in February.  Mr. Howarth submitted timely objections
25   and Ms. Crova revised the report I assume and responded to all
```

1   of them, so let's go through those now.  I've -- I've read

2   them.

3           First of all, Mr. Howarth objects to the title page

4   where there's the use of aliases, noting many of the names that

5   Mr. Faraj allegedly went by.  I did not really pay any

6   attention or make any note of the -- of the nicknames.  He was

7   known as Mojo by several of the witnesses in the trial.  And I

8   have noticed -- I have noticed the responses that the aliases

9   came from a law enforcement reporting system, and Ms. Crova

10  states she has a duty to decide -- or to include all those

11  names.

12          Would you like to say anything else about the

13  aliases, Mr. Howarth?  If you would now, I'd be glad to listen.

14          MR. HOWARTH:  No, Your Honor.  I think the Court has

15  accurately summarized the status.  There isn't something that's

16  going to be sentence determinative in any way.  It's merely

17  that sometimes aliases are used to conceal identity and other

18  times they're merely neighborhood ways of expressing how you

19  are known in a particular place.  I don't think they're

20  significant, and I have no problem with the status of the

21  Pre-Sentence Report as -- as long as it's, of course, noted

22  that he wasn't trying to conceal his identity.

23          THE COURT:  Okay.  All right.  I didn't see any

24  statement or other indication that he was trying to conceal his

25  identity here.  In fact, I believe he had a vehicle with his

1    name Mojo on the license plates.  Again, the information is

2    there as the pre-sentence officer is required to submit it.  I

3    will not order the -- the report be changed, but I will note

4    and receive the objection.

5            Anything you want to say, Mr. Graveline?

6            MR. GRAVELINE:  No, Your Honor.

7            THE COURT:  Okay.  All right.  Number 2 deals with

8    the -- in fact, there's a couple of these objections.  But the

9    trial testimony of Hafez Hammoud was that he attacked Harajli

10   and broke one of his arms, was told by Mr. Faraj, Mohamed

11   Faraj, that he had broken the wrong arm, so then he broke

12   another arm.  So Harajli, who was a street person residing near

13   the events in question, had two broken arms.  Hammoud, the

14   cooperating witnesses -- witness said that he was ordered to do

15   that by Mr. Faraj.

16           Mr. Howarth vociferously denies that and considers

17   Mr. Hammoud to be a pathological liar and an unreliable

18   witness, states that the false accusations of the vicious

19   attacks must be discounted.

20           Ms. -- Ms. Crova did make some changes to the report

21   on this basis.  She stated that -- she restated the testimony

22   at the trial and indicated that Mr. Alhakami testified about

23   these assaults as well.  She did note that Hafez Hammoud

24   testified violence was used by members of the conspiracy to

25   discourage others from operating on the defendant's block and

1    surrounding area, took Abed Faraj out of the report since he's

2    neither being sentenced nor did the testimony necessarily

3    indicate he had made any such order.

4            And again, Mr. Howarth, if you'd like to speak

5    further to this objection, you go right ahead.

6            MR. HOWARTH:  Thank you, Your Honor.  This objection,

7    unlike the first one, Your Honor, is the type of a thing which

8    can follow Mr. Faraj into prison and it was a seriously

9    disputed point.  And the thing which I suppose bothers me the

10   most is that I don't think that anyone could say that Hafez

11   Hammoud was a witness who was -- could be singled out for his

12   ability to present both sides of the story.

13           The government never sought to call Mr. Harajli, the

14   supposed victim, but all the indications that we got during

15   trial were that Mr. Harajli maintained a close friendship with

16   Mr. Haraj -- with Mr. Faraj and not necessarily with Mr.

17   Hammoud.  I think that the preponderance of the evidence either

18   would suggest strongly that Hafez Hammoud injured Mr. Harajli

19   on his own initiative.

20           There was a -- one particular government witness,

21   that being Sharif Sayed, who stated that it was his

22   observations that Mohamed Faraj was a great friend to Mr.

23   Harajli.  He had fed him when Mr. Harajli had no food, he sort

24   of looked out for him.

25           And I just am bothered by the thought of Mohamed

1    Faraj being incarcerated and it being part of his background

2    that the prison is going to look into that he would do an act

3    as, I'm sorry to use the word, dastardly as -- as what happened

4    to Mr. Harajli because that was a terrible thing, that

5    particular assault.  I don't like the idea of that going on to

6    a prison without strong comment being made that it was unproven

7    and that it came from a person who did not have the -- well,

8    certainly his interests were greatly different than Mr. Faraj's

9    interests in this trial.

10              THE COURT:  Okay.  All right.  Thank you very much.

11              Before I hear from the United States, let me just, to

12   maybe address some of the concerns, the paragraph, I think

13   the -- the sentence or two that is bothersome to Mr. Howarth

14   specifically is that, "According to trial testimony, violence

15   was used by members of the conspiracy, including Mohamed Faraj,

16   during the course of the conspiracy to discourage other drug

17   distributors from operating on the defendant's block and

18   surrounding distribution area.  It usually took the form of

19   verbal warnings and physical beatings."

20              The -- the sentences are certainly, in my view, based

21   on trial evidence.  You can question, as many have, including

22   the jury, the reliability of Hafez Hammoud's testimony, but I'd

23   be -- I'd be hesitant to order probation to change the report.

24   I would -- I would obviously consider Mr. Howarth's arguments

25   with a good deal of respect and give them the sort of deference

Sentencing • Monday, June 22, 2015

8

```
1   they deserve.
2           I suppose we could put in here that or order Ms.
3   Crova to put in here that this was based on the testimony of
4   one -- I mean the problem I'm seeing here is there is nothing
5   in here about Harajli, and so I'd be hesitant to change it too
6   much for that reason.
7           Mr. Graveline, what do you -- what do you have to
8   say?
9           MR. GRAVELINE:  I would agree with the Court's
10  recitation as it stands for paragraph 12, Your Honor, that the
11  Court just pointed to.
12          I would just point the Court to paragraph 15 which
13  does relate to -- actually, no, paragraph 15 did relate prior
14  to the objections and -- I'm sorry, I'm not sure if I brought
15  the revised thing.  Can I take a look at paragraph 15, Ms.
16  Crova?
17          THE COURT:  Yeah.  I'm -- I'm going sequentially and
18  we're dealing, or at least I was just dealing with -- but you
19  go ahead and take a look at the -- take a look at the report as
20  you -- as you decide.  Go ahead.
21          MR. GRAVELINE:  So paragraph 12 I think the Court's
22  right.  It's a very general recitation and it's not just based
23  on Hafez Hammoud's testimony.  It is based on any number of
24  cooperators, and I believe from Mr. Alhakami testified about
25  how he was utilized to beat people to establish Mr. Faraj's
```

1    area for drug dealing there.  It's paragraph 15 that

2    specifically talks about Mr. Harajli there, and it's on the --

3            THE COURT:  Okay.

4            MR. GRAVELINE:  -- towards the bottom of that

5    paragraph.

6            THE COURT:  All right.

7            MR. GRAVELINE:  The government believes that Hafez

8    Hammoud's testimony in this circumstance is highly credible.

9    The circumstances of how the beating went down points to Mr.

10   Hafez Hammoud's credibility, that is, that Mr. Harajli was

11   beaten on two different days and received a broken arm on two

12   different days, just as Mr. Hafez Hammoud pointed out.

13           As pointed out in our Sentencing Memorandum, it was

14   Hafez Hammoud who initially told the government about this

15   assault, and then we were able to confirm by going to Detroit

16   Police reports about the situation.

17           At the same time, in terms of the overall sentence in

18   this case, how it applies to Mr. Faraj, you know, once he

19   was -- he's been placed within Bureau -- the Bureau of Prisons,

20   the government has no objection if the Court wants to delete

21   out this particular reference to Mr. Harajli.

22           THE COURT:  Okay.  All right.  Okay.  Paragraph 12

23   remains as written.  I -- I -- I did look ahead, and Mr.

24   Howarth not only in his spoken objections here today addressed

25   paragraph 12 but paragraph 15 as well.

1          I suppose that given what paragraph 12 says, given

2    the arguments of Mr. Howarth and given the arm's-length

3    analysis of Mr. Graveline, I would just from "in May of 2010"

4    through "with a two-by-four board," we can delete that from the

5    probation officer's report.  I think it's summed up by

6    paragraph 12 in a more neutral fashion.

7          I remember the testimony quite well.  Ms. Crova, in

8    the usual fine fashion that she did, went and got the

9    transcript of the 2013 detention hearing, but apparently the

10   government states that Mr. Harajli didn't have a lot of

11   credibility at that hearing.

12         So given all those facts, and given that this is

13   something that, A, I'm not going to sentence on as an

14   individual act, B, which I'm aware of and will consider in the

15   whole summary of the enterprise and conspiracy, I think we can

16   just delete those two or three sentences.  Mr. Graveline, is

17   that okay with you?

18         MR. GRAVELINE:  Fine with me, Your Honor.

19         THE COURT:  All right.  Okay.  All right.  How's that

20   sit with you, Mr. Howarth?

21         MR. HOWARTH:  Much better, Your Honor.

22         THE COURT:  All right.  You understand our ruling

23   there, Ms. Crova?

24         PROBATION OFFICER:  I believe, Your Honor, that you

25   want the statement taken from paragraph 15, is that correct?

```
1          THE COURT:  Yes, starting with "in May of 2010" and
2     ending "with a two-by-four board."  I think those are two
3     sentences.
4          PROBATION OFFICER:  Yes, Your Honor.
5          THE COURT:  Okay.  Three sentences, okay?  All right.
6     Thank you very much.
7          So that will take care of objections 2 and 4,
8     correct, Mr. Howarth?
9          MR. HOWARTH:  Yes, sir.
10         THE COURT:  All right.  Let's talk about paragraph 13
11    and the objection to the allegation that your client, Mr.
12    Mohamed Faraj, began an illegal deal with Adnan Bazzi to take
13    over medication or prescription medication sales.  I recall
14    such testimony.  Your objection is that no proofs were adduced
15    at trial that the defendant engaged in pill distribution and he
16    was not convicted of such activity.  What else would you like
17    to say besides what you wrote in your objections to the
18    paragraph 13?
19         MR. HOWARTH:  I'm sorry.  I think that -- that sums
20    it up.  Again, this is something that I have concern with being
21    in a Pre-Sentence Report because it's going to give the opinion
22    that -- or give a coloring that other drugs were involved, and
23    this is a marijuana case.
24         THE COURT:  I had the impression that there was some
25    sales proven of -- and, of course, I haven't reread the entire
```

1   transcript of the trial, but I got the impression that there

2   were some sales of prescription medicines at -- in the -- in

3   the testimony.

4           Mr. Graveline, would you like to speak to this

5   objection?

6           MR. GRAVELINE:  Yes.  Early on within the conspiracy,

7   and specifically referencing October 2009, there were Detroit

8   police officers who came and testified how on specifically I

9   believe it was October 27th, 2009 they came and arrested

10  Mohammed Alhakami and found vials of marijuana, AK-47 and

11  Vicodin within the burnt-out houses on Rutherford.

12          There was testimony from Hafez Hammoud that said

13  during that time period, the summer and fall of 2009, that the

14  organization was selling both prescription pills and marijuana

15  off of the block on Rutherford.  But it was after the multiple

16  police arrests and reports throughout the fall of 2009 and

17  beginning over 2010 that he decided to enter into a

18  relationship with Adnan Bazzi who was dealing prescription

19  drugs.

20          It was after that, specifically in February, I

21  believe it was February 2010, might have been early March, that

22  Mr. Adnan Bazzi, Hafez Hammoud and Mr. Durgham Al-Fadhili, or

23  known as Peanut, were arrested at the Tipperary Pub.  So --

24  dealing prescription pills out of there.  There was controlled

25  purchase of prescription pills from that location.

1        And a subsequent police raid by Officer Jim Wiencek

2    of the Detroit Police Department found prescription pills as

3    well as vialed up marijuana both in the Tipperary Pub and in

4    the forest line of that, and we believe confirms Mr. Hafez

5    Hammoud's testimony of Mr. Bazzi and Mr. Faraj's agreement to

6    work in such a fashion.

7        THE COURT:  Okay.  All right.  That's a more accurate

8    summary than obviously I would be able to give, and it squares

9    with my recollection of the trial testimony.

10       Mr. Howarth's major issue I believe is with the final

11   sentence, "Lastly, Mohamed Faraj began a deal with Adnan Bazzi

12   that involved Bazzi taking over the prescription medication

13   sales of the organization."  I think that's true, and so I

14   don't see a reason to order Ms. Crova to change the report and

15   we will overrule objection number 3.

16       Which gets us to the last objection, number 5,

17   dealing with the criminal history.  And Mr. Howarth's point,

18   which I completely understand, are that a number of past

19   offenses that probation found out -- found and summarized were

20   the misdemeanor type, traffic type that don't constitute or

21   contribute to the Level VI Career Offender or Level VI Criminal

22   History Category.  In his usual even-handed and straightforward

23   way, Mr. Howarth said that the defendant does not deny past

24   criminal adventures and he doesn't argue that his punishment

25   cannot take them into consideration.  However, defendant hopes

1   the Court will treat them with the balance that they deserve.

2   I promise you that I will.

3          My -- my sense is that the Level VI is based on the

4   other criminal history that I'll probably talk about later that

5   doesn't have to do with these traffic offenses or the 11

6   offenses that occurred more than ten years ago when the

7   defendant was much younger.

8          So Ms. Crova again gives a -- a straightforward

9   response to the objection, but based on all the writing I've

10  seen, I would say I'll consider the criminal history for what

11  it's worth and not change the report, okay, Mr. Howarth?

12         MR. HOWARTH:  I'm fine with that, Your Honor.

13         THE COURT:  Okay.  All right.  Very good.  I believe

14  that that addresses all of the disputes that the parties have

15  lodged with the Court and the probation officer regarding the

16  probation officer's report.

17         I've read both sentencing memoranda.  Obviously both

18  sides are calling for or arguing for different sentences, but

19  we can -- we can get to that forthwith.

20         Is there anything else we need to talk about with

21  regard to the sentencing or the probation officer's report at

22  this time, Mr. Graveline?

23         MR. GRAVELINE:  Nothing from the government, Your

24  Honor.

25         THE COURT:  Mr. Howarth?

```
1              MR. HOWARTH:  I'm satisfied, Your Honor.
2              THE COURT:  Okay.  Then let me call Mr. Faraj up and
3    we'll get started with our sentencing at this time.
4              Thanks to both of the lawyers for your preparation
5    and work in handling the objections.
6              Mr. -- Mr. Faraj, the first question I would have for
7    you is whether or not you have had an opportunity to read and
8    discuss the entire Pre-Sentence Report, including any revisions
9    that have been made to it either here today or before you came
10   to court by the probation officer.  Have you had that chance?
11             DEFENDANT FARAJ:  Yes, I did.
12             THE COURT:  Okay.  Do you understand everything that
13   we've been arguing about here in court or do you need a minute
14   to talk to your lawyer about all that?
15             DEFENDANT FARAJ:  I understood it, Your Honor.
16             THE COURT:  You understand.  Okay.
17             With that in mind, there are no further issues in
18   dispute.  The Offense Level is 38, the Criminal History
19   Category is VI.  The guideline range appears to be 360 months
20   to life based on the mandatory minimum and guideline range
21   applicable to Count 1, and the two other counts have provisions
22   far less than that.  But given that there's a mandatory minimum
23   and a sentencing guideline at 38, Level VI of 360 months to
24   life, that will be the -- that will be the applicable guideline
25   range.
```

```
 1              I am relying on the entire recollection I have of the
 2    trial of the case as well as the probation officer's report as
 3    the factual findings of the Court for purposes of this hearing
 4    only, and we will now move from there.
 5              Okay.  There's no departure recommended by the
 6    government.  I assume you're going to argue for something less
 7    than 30 years but more than -- or at 20, is that correct, Mr.
 8    Howarth?
 9              MR. HOWARTH:  Yes, Your Honor.
10              THE COURT:  Okay.  So I won't make any decision on
11    any departure sought by the defendant until I hear from Mr.
12    Howarth.
13              At this time the defendant has a right to make any
14    statement or present any information to mitigate the sentence.
15    I'd like to recognize Mr. Howarth on behalf of Mr. Faraj for
16    any remarks he'd like to make on behalf of the defendant.  Sir,
17    you go right ahead at this time.
18              MR. HOWARTH:  Thank you, Your Honor.  Your Honor,
19    given the nature of federal practice generally and of my
20    practice, I'm all too often here in front of the Court after a
21    trial has taken place, and I wouldn't be here if we weren't
22    here for sentencing.  And therefore, I am most often put in the
23    position of the Court being interested in why we got here at
24    all.
25              In other words, there were a number of defendants in
```

1    this case and there were quite a few of them who decided to

2    enter pleas, to cooperate with the government if it was asked

3    for, and most of those people have come before the Court

4    already and been sentenced.  I don't want to go through the

5    litany of their names and what sentences that they received,

6    but, of course, I did continue to receive my Pacer reports and

7    so I paid more than passing attention to the fact that a number

8    of the people who were involved in this conspiracy have been

9    sentenced, and some of them have been sentenced under the

10   prevailing guidelines, even under the recommendations made by

11   the government with whom they had cooperated.

12          So normally I would be trying to find a way of saying

13   to the Court why it was that my client didn't take that same

14   route.  I'm hoping that the Court will remember that the first

15   time I was here before Your Honor on this case was a -- more or

16   less a final pretrial right before we were going to --

17          THE COURT:  Right.  I said right, I do remember that,

18   yeah.  You had a trial with Judge Kenny --

19          MR. HOWARTH:  Right.

20          THE COURT:  -- and you wanted an extension so you

21   came here.

22          MR. HOWARTH:  Yes.

23          THE COURT:  Yep, okay.

24          MR. HOWARTH:  But at any rate, I think the

25   government -- I mean the Court asked the government what the

1    offer in this case was.

2         THE COURT:  Right.

3         MR. HOWARTH:  And Mr. Graveline brought the sad news

4    that there was no offer whatsoever.  That changed things not as

5    far as whether we were going to -- well, whether there was

6    going to be a trial necessarily, but it changes things in that

7    Mr. Faraj never had an opportunity to accept a plea from the

8    government because he wasn't offered one, and the only thing he

9    could have done was just to stand here and say "I'm guilty and

10   I'm not going to ask for anything," and I don't think that

11   would have been a very sound strategy.

12        What I'm getting to and maybe -- I hope I'm not

13   beating around the bush by saying that I'm hoping that the

14   Court at this time is not going to hold against him the fact

15   that he went to trial.  Normally judges will say," Well, I

16   understand that you exercised a Constitutional right, but

17   there's often a concomitant price that has to be paid for the

18   fact that you didn't decide to come up and say that 'I've

19   committed the crime.'"  And in this case, since there was no

20   offer, I hope that that is not held against Mr. Faraj.

21        Secondly, I do not make light of the conspiracy that

22   the jury found occurred here and I do not make light of the

23   fact that the drug involved was marijuana, although I think it

24   is still only fair to state that comparatively, it is a drug

25   which does not have the serious implications to society that

Sentencing • Monday, June 22, 2015

1    other illegal drugs do.  I fully accept its illegality and I
2    fully accept the illegality of the way it was used and
3    distributed in this case.  But I'm hoping that the Court will
4    note that, with the exception of some rather minor evidentiary
5    offerings as to the fact that there were other drugs involved,
6    that we are not happily doing a heroin or a crack cocaine type
7    of a case.
8          Further, Your Honor, I think that even from this
9    trial and even without Mr. Mohamed Faraj testifying, we do know
10   that he is not necessarily a public enemy number one type of
11   person that some members -- that some government witnesses, and
12   I think for their own gain, portrayed him as being, and, of
13   course, I'm pointing very much to Hafez Hammoud, although there
14   were others.
15         But government witness like Sharif Sayed, who of all
16   of the people that I had to cross-examine in this case I
17   thought I cross-examined with the least fervor because he
18   seemed like a pretty honest young man, and he seemed to be the
19   type -- the one government witness that was standing up for
20   what he did wrong and not trying to pile it on to people that
21   he could get a chance to testify against.  And his
22   recollections of the defendant and his character and his
23   actions were certainly, in my opinion, the most fair of those
24   that were presented by the government and they weren't bad as
25   to the type of person that Mohamed Faraj was.

1          Mohamed Faraj is going to go to prison and he's going
2    to go to prison for a considerable period of time, and there's
3    no way that I can get around that.  And I'm only hoping that
4    the punishment will fit the crime.  I don't suggest for a
5    moment that I would come in here thinking that it wouldn't.
6    But it's quite difficult, after we sat through probably six or
7    seven weeks of trial, to suggest that this is going to be the
8    type of case where probation is what's on the line.  He's going
9    to be punished, he's going to prison for years.
10          After you get to a certain number of years in prison,
11    I think that the Court may accept what an awful lot of
12    criminologists have said and people who have written on the
13    subject going back many, many years, that there's a certain
14    point where the sentence of the Court becomes nothing but pure
15    punishment, that it has absolutely no chance of having a -- any
16    type of rehabilitative effect whatsoever.
17          The mandatory minimums in this case are such that it
18    would seem that that type of punishment is anything but the
19    slap on the wrist.  The -- what Mr. Faraj is going to have to
20    go through in prison, I'm suggesting at the level of the
21    mandatory minimums, is sufficient.  I -- the Court knows better
22    than I that sentencing guidelines are no longer mandatory or --
23    nor are they necessarily considered to be presumptively what
24    should be done in this case, and the Supreme Court decided that
25    ten years ago.

1          With that in mind and with the fact in mind that this

2     Court has a good deal of latitude in meting out a sentence, I'm

3     hoping that there is no reason to go beyond the mandatory

4     minimums that Congress has set.  This is not a killer.  This is

5     not a person who was evil.  And this is not a person, contrary

6     to what the government has expressed, who made a million bucks

7     off his -- off his misdeeds.

8          When they talk about the volumes and then they throw

9     numbers that come with the volumes and they talk in effect

10    really about millions of dollars being made, the Court is going

11    to sentence a man who is in his early 30s.  This is a man that

12    has never owned outright his own car.  This is a man who has

13    never owned a home.  This is a man who had no bank accounts and

14    no cash horde.  This is a man who never took a vacation.  This

15    is a man who did have a penchant for some fancy shoes and some

16    fancy belts, but I don't think that that makes you a drug

17    kingpin financially.  What he did was wrong, what he did was

18    bad, and nobody is going to, with any common sense in the

19    world, come in and tell the Court otherwise.

20         But what I am stressing to the Court is the minimums

21    that were laid out by Congress are sufficient in this case and

22    I'm hoping that the Court will be guided by those, and I'm

23    asking that that be the sentence that the Court gives.

24         THE COURT:  Okay.  Excellent.  Thank you very much,

25    Mr. Howarth.  As always, thank you for that argument and your

1    fine work on behalf of your client, and the Court's very

2    grateful for your work in pursuit of this appointment.  We need

3    lawyers like you to be able to -- to represent defendants in

4    the straits that Mr. Faraj is in, and we're grateful.

5         Mr. Faraj, you have the right now on your own behalf

6    to speak to the Court as to anything you'd like to say

7    specifically about your sentence, including anything you should

8    want to say that would mitigate it or make it less.  You go

9    right ahead now.

10        DEFENDANT FARAJ:  Good morning, Your Honor.  I would

11   like to thank the Court for allowing me the opportunity to

12   speak on my own behalf.

13        The main issue I want to address today is the notion

14   that I was the kingpin of a continuing enterprise.  It is true

15   I've sold small amounts of marijuana in the past, but the idea

16   of me being head of some kind of enterprise would be laughable

17   if the consequences wasn't so grave.  The government has gone

18   out of their way to paint me as a monster terrorizing an entire

19   community, and everyone knows me knows that's false.

20        The allegations that I was -- that me or someone on

21   my behalf was burning vacant homes is apparently -- then used

22   the burned-out remains to stash and sell drugs is ridiculous.

23   It was common knowledge in the neighborhood that those homes

24   were vandalized by a group of young kids for the thrill of it.

25   I have never burned or asked anyone else to burn anything in

1    this neighborhood ever.

2            In short, Your Honor, I'm not the man the government

3    has made me out to be.  I have made some poor choices and for

4    that I am truly sorry, but I do not deserve a sentence like the

5    government is asking for.  If I were truly this evil kingpin,

6    the government would not have had to rely on perjured

7    testimony.  All the government witnesses received something in

8    return for their testimony.

9            As for my brother, Fouad Faraj, I want to state on

10   the record that he is innocent and he does not deserve to spend

11   another day locked up.

12           Finally, Your Honor, as for my attorney, James

13   Howarth, I want to start by saying he's a good guy with a good

14   heart, but like I told him, I don't think he had enough time to

15   properly defend me.

16           I'd like to thank the Court again for allowing me to

17   speak.

18           THE COURT:  Okay.  All right.  Thank you very much

19   and we're grateful for those words as well.

20           The Court would now like to recognize Mr. Graveline

21   on behalf of the United States.  Obviously, Mr. Graveline, you

22   have any -- you have the right to make any comments you'd like

23   to make on behalf of the United States and to present any

24   victims if there are any present today who wish to be heard,

25   and I'd invite you to go right ahead now.

1          MR. GRAVELINE:  Thank you, Your Honor.

2          The government wrote a lengthy Sentencing Memorandum

3     in this case, and I don't intend to repeat a lot of the

4     arguments or the 3553 factors that we addressed in our

5     Sentencing Memorandum.

6          The only point that the government would like to

7     stress today is the harm to the community based -- that are

8     directly caused by the defendant and his actions in the case

9     are very real and they affected a lot of people.  They affected

10    the neighbors on Rutherford.  You, the Court, heard from a

11    number of them:  People who were afraid to come out of their

12    harms.  People who were afraid to drive north on their block to

13    get to the main artery in that neighborhood, Warren Avenue.

14    The Court heard how there was an elementary school at the very

15    end of the block that these drugs were being distributed on.

16    Court heard about all of the fires that occurred on this block.

17    There were very real world consequences for a number of people,

18    not the least of which were also the men or really the boys

19    that the defendants helped recruit in this case.

20         So in terms of victims, Ali Al-Hisnawi is a victim in

21    this case.  He picked up a felony, multiple felonies working

22    for the defendant.  Peanut, Durgham Al-Fadhili, a real victim,

23    someone who now has felony convictions for working for Mohamed

24    Faraj, and the list goes on and on and on.

25         And the Court heard of over a dozen young men in this

1    area recruited by the defendant, arrested, obtained felonies,

2    all while Mr. Faraj and this business enterprise continued on,

3    and continued on for one purpose and that was to enrich Mr.

4    Faraj and his family.

5         And Mr. -- Mr. Howarth's arguments that Mr. Faraj

6    does not have a million dollars stashed somewhere, that goes to

7    Mr. Faraj's choice on how he spent his money.  The Court saw

8    the lavish lifestyle he lived, the expensive clothing,

9    thousands and thousands of dollars dropped on clothing,

10   thousands of dollars dropped on large screen T.V.s, thousands

11   of dollars dropped on the vehicles that the Faraj family drove,

12   all the while hearing the testimony of the young teenage

13   workers who were paid $50 to work in a 12-hour drug dealing

14   shift.  It wasn't for their benefit that these drugs were being

15   distributed, it was for Mr. Faraj and his family and the

16   enrichment of them.

17        And we believe that based upon the grave societal

18   harm that the defendant's crimes have brought, he deserves a

19   sentence over 30 years in this case.

20        THE COURT:  Okay.  Thank you very much, Mr.

21   Graveline.

22        No victims to present I take it?

23        MR. GRAVELINE:  No, Your Honor.

24        THE COURT:  Okay.  I'm going to talk a little bit

25   about the case and the 3553(a) factors, and -- and then I'm

1    going to announce the sentence, and both lawyers will have an

2    opportunity to object to the sentence after I state it.

3          I doubt I've ever had a case that went to trial that

4    I've given this much thought to in terms of sentencing, and I

5    will summarize some of the many thoughts I've had in the past

6    six months about the case today.

7          And I think the first thing I would say is that after

8    I heard Mr. Faraj speak today, it's important for me to keep in

9    mind that I'm sentencing Mr. Faraj here and I'm not sentencing

10   his lawyer, Mr. Howarth, whose affection has only grown over

11   time.  And I'm not so sure Mr. -- Mr. Faraj should have taken

12   the time to mention that Mr. Howarth needed more time to

13   prepare because he didn't.  No one could have given a better

14   defense to this case.  No one could have taken this case to

15   trial and gotten all the gun charges dismissed and the amounts

16   of marijuana lowered below a hundred kilograms with more time

17   or with less time, frankly.  His work in this case and his

18   sentencing memo and his remarks today were extraordinary and

19   made me forgot, for some period of time at least, the

20   seriousness of what we were dealing with.

21         The defendant has a career -- well, not a career

22   offender status, but he is maxed out at Criminal History No.

23   VI.  And that has nothing to do with traffic violations, that

24   has nothing to do with criminal activity that's ten years

25   older, ten years or older.  That has to do with a life of

1    lacking gainful employment, criminality and -- and a number of

2    sentences that have led to the Criminal History Category of VI.

3         I -- at the jury trial when Mr. Howarth stated to the

4    jury that the case was overcharged, he struck a nerve with me,

5    and I thought that a Continuing Criminal Enterprise for this

6    case might have been excessive.  Whether it was or whether it

7    wasn't is not for me to decide.  That was the charge lodged by

8    the United States, that was the charge determined by the jury

9    in its verdict as one of guilt, and that is the charge that the

10   United States Congress, as representing its people, has decided

11   in its wisdom to impose a 20-year term for and not to -- not to

12   lower that.

13        There were teenagers used in the commission of this

14   crime, and whether people want to debate about the destruction

15   of the neighborhood, my review of the entire record determines

16   that -- that the neighborhood certainly went downhill as a

17   result of what was going on over there and could not have

18   any -- in any material way been considered better by the

19   activities that occurred, and the -- the residents complained

20   about it and the United States did something about it.  And if

21   you're going to distribute drugs with guns and people like

22   Hafez Hammoud and others, you're going to risk what's happening

23   today.

24        On the other hand, I'm going to depart from

25   360 months.  And as a former prosecutor and a person who's been

Sentencing • Monday, June 22, 2015

1    considered or at least labeled, not by myself but by others, as

2    a law enforcement, you know, law and order sort of judge,

3    there's -- there's no way that I have any problems with stiff

4    sentences for criminal activity that's destructive, long-term

5    and really counterproductive to the people's needs in our

6    society.

7              But there are a few things that -- that -- that

8    really trouble me about 30 years for this particular defendant

9    in this particular case.  Mr. Graveline is correct, there were

10   financial enhancements or there was an enhanced financial

11   position as a result of the drug dealing.  On the other hand,

12   it wasn't what I've seen in some case -- cases where we have

13   million dollars of cash, boats, expensive residences.  This was

14   largely contained in the family.

15             The number one thing that troubled me throughout, and

16   I can't get around this intellectually and it's not a -- it

17   doesn't have anything to do with the personalities in the case,

18   but I can't understand why the government on the one hand is

19   prosecuting a case like this where this marijuana is being

20   sold, and on the other hand not doing anything on the demand

21   side.  In fact, the United States is giving a pass to medical

22   marijuana facilities, not prosecuting lower level possessors of

23   marijuana.  Most of the customers of this defendant would not

24   be prosecuted by the United States.

25             I was just in the Ninth Circuit in February in which

```
 1    the largest medical marijuana facility in the United States was
 2    forfeited, but never were a single person prosecuted or put in
 3    jail for dealing massive amounts of marijuana, far higher than
 4    what was -- what was dealt here.
 5              And that's -- it just seems so -- and I'm not
 6    personalizing this to you, Mr. Graveline.  You've done an
 7    excellent job throughout and you've been great to the Court,
 8    but, you know, you're standing here on behalf of people who
 9    want 30 years for a fellow dealing marijuana in Dearborn and
10    not doing anything about the narcotics in other contexts and,
11    in fact, allowing its use, and that -- that really bothers me.
12    I can't -- I can't just overlook that.
13              I can't understand why Hammoud didn't get prosecuted
14    at all.  That doesn't seem fair to me.  He's walking away from
15    this.  And what really troubled me about Hammoud was that
16    Dearborn Police Department report that came in and that I did
17    not allow him to be cross-examined on, but his behavior there
18    as he was continuing to cooperate and testify for the
19    government troubled me a lot.
20              The jury acquitted on the gun charges.  They went
21    down on the level of marijuana involved.  It seems to me they
22    did not see this as serious a case as perhaps the United States
23    did.  And I think on the basis of all those factors, I should,
24    in fairness, be more merciful in sentencing as well.
25              I looked at the guidelines absent a Criminal --
```

1    Continuing Criminal Enterprise charge and I looked at 80 to

2    100 kilograms of marijuana, Criminal History Category VI, use

3    of teenagers, use of guns, two points for the role in the

4    offense as being a leader, guns involved, all the enhancements,

5    and I came up with 34, Level VI, and that equates to a 262 to

6    2 -- excuse me, 327-month term, which is lower than the

7    360 months called for here.

8           Other than what I've already said, I don't have a

9    reason to depart to that range, but I'm going to do so because

10   I think the interests of locking people up for massive amounts

11   of time like 30 years punishes and hurts people and gives them

12   absolutely no way to get back to be productive members of

13   society and it's -- it's just too harsh.  And again, this is

14   coming from a person who has stood in Mr. Graveline's position

15   and argued for 30 years to life in certain cases, and I just --

16   I just think it's -- it's too much.

17          Based on all of that, I'm going to go down to 262 to

18   327 months and I'm going to sentence at 276 months -- excuse

19   me, 288 months, which is 24 years or a six-year, 60-month --

20   excuse me -- yeah, six-year, 72-month departure, and I do that

21   for all the reasons I said.  Again, I've thought about this for

22   months and that's the best I can do in this case for all the

23   reasons I just stated.

24          Pursuant to the Sentence Reform Act of 1984, the

25   Court, having considered the sentence guidelines and factors

1    contained in 18 USC, Section 3553(a), hereby therefore places

2    the defendant, Mohamed Faraj, into the custody of the U.S.

3    Bureau of Prisons for a term of 288 months on Count 1,

4    240 months on Count 2, and 48 months on Count 5, all counts to

5    be served concurrently.

6          Upon release from imprisonment, the defendant shall

7    be placed on supervised release for a term of three years on

8    Counts 1 and 2 and a period of one year on Count 5.  All counts

9    of supervised release will be served concurrently.

10         The Court waives the imposition of a fine, the cost

11   of incarceration, the cost of supervision due to the

12   defendant's lack of resources.

13         Special assessment of hundred dollars on each count

14   for a total of $300 will be ordered due immediately.

15         Mandatory drug testing will be imposed.

16         While on supervised release, the defendant shall

17   abide by the standard conditions adopted by the U.S. District

18   Court for the Eastern District of Michigan as well as the

19   following special conditions:

20         Number one, due to the history of abusing marijuana,

21   the following special condition is imposed:  If necessary, Mr.

22   Faraj will participate in a program approved by the Probation

23   Department for substance abuse, which may include testing to

24   determine if the defendant has reverted to the use of drugs or

25   alcohol as necessary.

1          Secondly, due to the unstable employment history, the
2    following additional condition is imposed:  Mr. Faraj shall be
3    lawfully and gainfully employed on a full-time basis or shall
4    be seeking such lawful, gainful employment on a full-time
5    basis, full-time being defined as 40 hours a week.  In the
6    event that the defendant has part-time employment, he shall
7    devote the balance of such 40 hours a week to his efforts in
8    seeking additional employment.
9          That will be the sentence of the Court.  I'm sure
10   both of you object to it, so I'll start with you, Mr.
11   Graveline.  Any objection?
12         MR. GRAVELINE:  Actually we have one other portion,
13   Your Honor, the stipulated money judgment.
14         THE COURT:  Asset forfeiture.  Come on up, Mr.
15   Juncaj.  What's on your mind here today?
16         MR. JUNCAJ:  Thank you, Your Honor.  Previously --
17   recently the Court entered a forfeiture money judgment against
18   Mr. Faraj and Fouad Faraj imposing a forfeiture money judgment
19   in the amount of $1,120,000, and under Rule 32.2, I wanted to
20   make that part of the record here at sentencing and
21   respectfully request that it be included in the judgment, and
22   I'll be happy to facilitate the language for the Court.
23         THE COURT:  Okay.  We will -- I recall signing the
24   order.  We will include the information that you've -- will
25   propose into the judgment.

Sentencing • Monday, June 22, 2015

33

```
 1              Any problem with that, Mr. Howarth?
 2              MR. HOWARTH:  No, Your Honor.
 3              THE COURT:  All right.  We will include the language
 4    in the order.
 5              Anything else you want to say, Mr. --
 6              MR. JUNCAJ:  No, Your Honor.  Thank you.
 7              THE COURT:  Okay.  Objections to the sentence, Mr.
 8    Graveline?
 9              MR. GRAVELINE:  No objection.
10              THE COURT:  Okay.  All right.  Very good.  You feel
11    free to object and appeal and take me down there for 30 years.
12              MR. GRAVELINE:  The government does not object.
13              THE COURT:  Yeah.  All right.  Okay.  Thank you very
14    much.
15              Mr. Howarth, objections from you?
16              MR. HOWARTH:  We reserve the right to object to the
17    sentence.
18              THE COURT:  Okay.  Well, if you don't say anything
19    now, you may -- you may -- so why don't you go ahead and
20    object, and if --
21              MR. HOWARTH:  I will object, Your Honor, to the
22    sentence.
23              THE COURT:  Okay.  All right.  Okay.  All right.  The
24    objections are noted.  I think Mr. Howarth stated all of his
25    objections earlier, all preserved for appeal and overruled, but
```

1    I understand that the defendant obviously doesn't like the

2    sentence.

3           With that in mind, the sentence that I stated earlier

4    will be imposed.  Mr. Faraj, you have the right to appeal,

5    including the right to appeal the sentence I just gave you here

6    today notwithstanding that it was a -- a departure below

7    guidelines.

8           Any Notice of Appeal must be filed within 14 days of

9    the entry of judgment or within 14 days of the filing of a

10   Notice of Appeal by the United States.  If requested, the clerk

11   can prepare and file a Notice of Appeal on your behalf.

12          If you can't afford to pay the cost of an appeal or

13   for appellate counsel, you have the right to apply for leave to

14   appeal in forma pauperis, which means you can apply to have the

15   Court waive the filing fee.  On appeal, you may apply for

16   court-appointed counsel.

17          The defendant will be remanded to the custody of the

18   marshal for service of his sentence.

19          Both parties have copies of the Pre-Sentence Report.

20   We will furnish amended copies and corrections of all those

21   issues we resolved today to the Bureau of Prisons and the

22   Sentence Commission.  All other copies are to be kept strictly

23   confidential.  Counsel on appeal will be able to look at the

24   Pre-Sentence Report, but under no circumstances will sentencing

25   recommendations be disclosed to appellate counsel.  That is the

```
 1    practice of the district.

 2            That will be it from here.  Anything further from the

 3    United States?

 4            MR. GRAVELINE:  Nothing from the government, Your

 5    Honor.

 6            THE COURT:  Mr. Howarth?

 7            MR. HOWARTH:  Mr. Faraj had one point.  I want to

 8    make sure I get this right.

 9            (Brief pause)

10            MR. HOWARTH:  Mr. Faraj is asking the Court to make a

11    recommendation, which he understands is not binding, for a drug

12    program while incarcerated.

13            THE COURT:  Definitely.  I don't know if I said that

14    as part of the sentence, but a facility with a good quality

15    drug treatment and recovery program would be recommended, and I

16    think it's very much in your -- speaks in your favor that you

17    are looking for that, Mr. Faraj.

18            All right.  That will be it from here.  I -- I wish

19    you good luck.  We tried to be a little merciful and hopefully

20    get you out where you can get back and contribute, but you need

21    to work on it in prison obviously.

22            What's up, Mr. -- oh, Ms. Crova's got something.

23            PROBATION OFFICER:  May I approach, Your Honor?

24            THE COURT:  Yep, of course.

25            (Whereupon a brief discussion was held off the
```

Sentencing • Monday, June 22, 2015

```
 1              record)

 2              THE COURT:  Okay.  All right.  Let me revise the

 3    sentence.  Ms. Crova informed me and I -- there's no 5K,

 4    there's no outside the heartland of the guidelines.  Therefore,

 5    I did not -- I said that I departed from the guideline.  I did

 6    not.  I varied on the basis of the 3553(a) factors that I

 7    discussed here today, and I got a little carried away and said

 8    I departed.  I didn't.  I varied from 360 to 288 based on the

 9    circumstances and 3553(a) factors that I -- I stated.

10              So with all that in mind, unless there's anything

11    else, we're finished and I intend to adjourn.  Mr. Graveline?

12              MR. GRAVELINE:  Nothing further from the government.

13              THE COURT:  Okay.  All right.

14              MR. HOWARTH:  Nothing further from defendant.

15              THE COURT:  All right.  Very good.  We'll be in

16    recess then.  Thank you, lawyers, very much for your hard work.

17              THE CLERK:  Court is in recess.

18              (Proceedings concluded at 3:36 p.m.)

19                              —  —  —

20

21

22

23

24

25
```

```
 1              C E R T I F I C A T I O N

 2         I, Linda M. Cavanagh, Official Court Reporter of the

 3    United States District Court, Eastern District of Michigan,

 4    appointed pursuant to the provisions of Title 28, United States

 5    Code, Section 753, do hereby certify that the foregoing pages 1

 6    through 36 comprise a full, true and correct transcript of the

 7    proceedings held in the matter of United States of America vs.

 8    D-1 Mohamed Faraj, Case No. 13-20564, on Monday, June 22, 2015.

 9

10

11                   s/Linda M. Cavanagh
                     Linda M. Cavanagh, CSR 131, RPR, CM, CRR
12                   Federal Official Court Reporter
                     United States District Court
13                   Eastern District of Michigan

14

15

16    Date: July 29, 2015
      Detroit, Michigan
17

18

19

20

21

22

23

24

25
```